IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND, et al.,<br>LABORERS' WELFARE FUND OF THE<br>HEALTH AND WELFARE DEPARTMENT<br>OF THE CONSTRUCTION AND GENERAL<br>LABORERS' DISTRICT COUNCIL OF<br>CHICAGO AND VICINITY, and LABORERS'<br>DISTRICT COUNCIL RETIREE HEALTH<br>AND WELFARE FUND, and CATHERINE<br>WENSKUS, not individually, but as<br>Administrator of the Funds, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| | ) | Case No. 19 C 3022 |
| Plaintiffs, | ) | |
| v. | )<br>) | |
| M2 CONSTRUCTION, INC., an Illinois<br>corporation, and RAMON CALDERON,<br>individually, | )<br>)<br>) | |
| Defendants. | )<br>) | |

## COMPLAINT

Plaintiffs, the Laborers' Pension Fund and the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, and Laborers' District Council Retiree Health and Welfare Fund, and Catherine Wenskus, in her official capacity as the Administrator of the Funds (herein collectively referred to as "Funds"), by their attorneys, Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska, Katherine C. Mosenson, and Sara S. Schumann, for their Complaint against Defendants M2 Construction, Inc., and Ramon Calderon state the following:

## JURISDICTION AND VENUE

1.     Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as

1

amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2.   Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

## THE PARTIES

3.   The Funds are multiemployer Trusts established pursuant to Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds maintain their respective Plans, which are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. § 1002(3) and 37(A), pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. The Funds have offices and conduct business within this District.

4.   Plaintiff Catherine Wenskus is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union").  With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5.   Defendant M2 Construction, Inc. (hereinafter referred to as the "Company"), is an Illinois corporation that conducts business within this District and was, at all times relevant to this cause, an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6.   Defendant Ramon Calderon, is being sued in his individual capacity, because as

2

President of the Company he signed an individual guaranty, agreeing to pay for the contributions owed to the Funds, as determined by the audit, covering January 2, 2015 through March 31, 2016, as well as agreeing to timely report and pay his Company's ongoing monthly contributions owed to the Funds from November 1, 2018 forward (See Exhibit B, Guaranty).

## FACTS COMMON TO ALL COUNTS

7.      The Union is a labor organization within the meaning of 29 U.S.C. 158(a).  The Union and Company have been parties to a Collective Bargaining Agreement ("Agreement"), at all times relevant, and at least since, January 2, 2015.  Exhibit A, which is a copy of the Company's "short form" Agreement entered into between the Union and Company that adopts and incorporates the Master Agreements between the Union and various employer associations, and also binds the Company to the Funds' respective Agreements and Declarations of Trust is attached hereto.

8.      The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Builders Association ("BAC"), Chicago Area Independent Construction Association ("CAICA"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Industry Advancement Fund ("IAF"), and the Laborers' District Council Labor Management Committee Cooperative ("LDCLMMC"), to act as an agent in the collection of contributions due to those funds.

9.      The Agreement and the Funds' respective Agreements and Declarations of Trust obligate Company to make contributions on behalf of its employees covered by the Agreement

3

for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages at twenty (20) percent of the report amount plus interest, which is assessed at twelve (12) percent from the date the contribution would have been marked untimely paid until that amount is paid in full.

10.     The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance. On or about September 11, 2018 the Funds provided the Company with a written demand for the audit period, covering April 1, 2016 forward to be conducted by the designated independent auditing firm of Bansley & Kiener, LLP (herein referred to as the "B&K Audit").

11.     The Agreement further obligates the Company to obtain and maintain a surety bond to insure future wages, pension and welfare contributions, and Company has failed to obtain and maintain a surety bond.

**COUNT I**
**(Failure to Timely Pay Employee Benefit Contributions)**

12.     Plaintiffs re-allege paragraphs 1 through 11 as if fully set forth herein.

13.     Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company performed covered work during the months of April 1, 2016 forward, but has:

(a)     failed to submit reports and contributions to Plaintiff Laborers' Pension Fund in

4

the amount of $10,932.84 for the period of January 2, 2015 through March 31, 2016, and for amounts from the period from April 1, 2016 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)     failed to submit reports and contributions to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity in the amount of $15,367.86 for the period of January 2, 2015 through March 31, 2016, and for amounts from the period from April 1, 2016 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)     failed to submit reports and contributions owed to Plaintiff Laborers' District Council Retiree Health and Welfare Fund of the Construction and General Laborers' District Council of Chicago and Vicinity in the amount of $8,534.85 for the of January 2, 2015 through March 31, 2016, and for amounts from the period of April 1, 2016 forward, thereby depriving the Retiree Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(d)     failed to submit reports and contributions to Laborers' Training Fund for the period of period of April 1, 2016 to the present, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries; and

(e)     failed to report and pay all contributions owed to LECET, LDCLMMC and CAICA funds, for the period of April 1, 2016 to the present, thereby depriving said funds of contributions, income and information needed to administer said fund(s) and jeopardizing the

5

benefits of the participants and beneficiaries.

14.     The Company's actions in failing to submit timely reports and contributions violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185, and federal common law interpreting ERISA, 29 U.S.C. §1132 (g)(2).

15.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, Company is liable to the Funds for delinquent contributions, liquidated damages, interest, audit costs, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendants M2 Construction, Inc., as follows:

a.     ordering M2 Construction, Inc., to submit benefit reports and contributions for the time period of April 1, 2016 forward;

b.     entering judgment in sum certain against M2 Construction, Inc. on the amount of $34,834.85, owed for the period from January 2, 2015 through March 31, 2016, and for the amounts found due and owing from the B&K Audit, as pleaded in the Complaint, from April 1, 2016 forward, including contributions, interest, liquidated damages, audit costs, and attorneys' fees and costs;

c.     ordering M2 Construction, Inc., to submit its books and records to the Funds' selected independent auditing firm for the B&K Audit of the period from April, 1, 2016 forward;

d.     enter judgment in sum certain against M2 Construction, Inc., on the amounts due and owing pursuant to the B&K Audit, including interest, liquidated damages, audit cost and attorney fees and costs;

e.     ordering M2 Construction, Inc., to obtain and maintain a surety bond in accordance with the terms and conditions of the agreement; and

f.     awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II
### (Failure to Report and Pay Union Dues)

16.     Plaintiffs re-allege paragraphs 1 through 15, as if fully set forth herein.

17.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been, or have been, deducted by the Company from the wages of covered employees.

18.     Dues reports and contributions are due by the 10th day following the month in which the work was performed. Dues reports and contributions, which are not submitted in a timely fashion, are assessed liquidated damages at the rate of ten (10) percent.

19.     Notwithstanding the obligations imposed by the Agreement, the Company has performed covered work during the months of April 2016 forward and has failed to withhold and/or report to and forward union dues, which were deducted, or should have been deducted, from the wages of its employees for the period of April 1, 2016 forward, thereby depriving the Union of income and information.

20.     Pursuant to the Agreement, the Company is liable to the Funds for the unpaid union dues, as well as for the liquidated damages, audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

21.     The Company's actions have violated and are violating Section 301(a) of the

LMRA 29 U.S.C. § 185(a).

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant M2 Construction, Inc., as follows:

a.      ordering M2 Construction, Inc., to submit its April 2016 to present monthly reports and contributions and to submit its books and records for the B&K Audit of that period;

b.      entering judgment in sum certain against M2 Construction, Inc., on the amounts due and owing, if any, as revealed by the reports to be submitted, including dues contributions, liquidated damages, audit costs, attorneys' fees and costs; and

c.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT III
### (Defaulted Note and Personal Guaranty)

22.     Plaintiffs re-allege paragraphs 1 through 15, as though fully set forth herein.

23.     On or about November 2018, the Company's President Ramon Calderon executed his Personal Guaranty ("Guaranty"), agreeing to personally guaranty the Company's Installment Note with the Funds, in the total of $56,223.10 (hereinafter the "Note," which is attached hereto as Exhibit C), as well as agreeing:

> to be personally liable for all benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council [the Union], all ancillary funds, and/or the participants that are due at the time the Note or Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note…

(See attached, Exhibit B, at ¶1).

24.     The Note requires the Company to make twenty-four consecutive monthly payments to the Funds, each in the amount of $1,935.29 (consisting of $853.77 to the Laborers' Welfare Fund, $474.14 to the Laborers' Retiree Welfare Fund, and $607.38 to the Laborers'

Pension Fund) (See, Exh. C, at ¶6).

25.     The Company failed to make its monthly installment payments on its Note, since February 15, 2019, when it submitted its January payment untimely, as reflected by the Funds' Payment Plan Worksheet that tracks the Company's payments, and which is attached hereto as Exhibit D. According to the Note, each of the Company's monthly payments is to be received by the tenth (10th) day of the month, in which the payment is due (See, Exh. C, at ¶9).

26.     The Note is conditioned on the Company staying current on its ongoing monthly obligations (Exh. C, at ¶10), and as explained in Counts I and II above, the Company has failed to report and pay contributions and dues respectively from April 1, 2016 to the present as well.

27.     The Company is in default, and the Note provides acceleration of the remaining balance in the event of a default. The amount remaining due as to the monthly Note payments is $34,834.85 (Exh. C, at ¶9; and Exh. D). The amount due pursuant to the Company's ongoing obligations to report and pay contributions and dues from April 1, 2016 to the present will be determined through the B&K Audit of the period.

28.     The Note further provides that, in the event of default, the Company agrees to pay all attorneys' fees and costs incurred by the Funds to collect on the Note as well as the charges which apply to untimely payment of monthly contributions "under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust." (See, Exh. C, at ¶9-10). Per the agreements, liquidated damages in the amount of twenty (20) percent apply to delinquent monthly contributions to the Laborers' Pension, Welfare, Retiree Welfare and training funds, while ten (10) percent liquidated damages are applied to all other delinquent contributions and to unpaid dues), plus interest (See, Exh. C, at ¶9-10).

29.    Despite the Funds' demand being duly made, the Company has not paid the required current monthly Note·payments, nor other sums due.

30.    The Guaranty provides that guarantor, Ramon Calderon, guarantees all fees and costs incurred by the Funds in collecting amounts due thereunder and the monthly contributions and/or union dues that become due and owing to the Funds during the duration of the Note (Exh. B).

31.    Despite demand duly made, the Company and Ramon Calderon have not made payment of current contributions for the period from April 1, 2016 to the present.

WHEREFORE, Plaintiffs' Funds respectfully request this Court enter judgment in favor of Plaintiffs and against Defendants, M2 Construction, Inc., and Ramon Calderon, individually, holding them jointly and severally liable for the remaining balance of $34,834.85 due on the Note, covering the period of January 2, 2015 through March 31, 2016, and the amounts due pursuant to the B&K Audit, covering the period of April 1, 2016 through the present, pursuant to the terms of the Note and the Guaranty, plus liquidated damages, interest, audit costs and attorneys' fees and costs, as well as any other legal or equitable relief as the Court deems appropriate.

Respectfully submitted,

LABORERS' PENSION FUND, et al.

By: ___  /s/ Sara S. Schumann
        *One of Plaintiffs' attorneys*

Laborers' Pension and Welfare Funds
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1497
SaraS@chilpwf.com
May 3, 2019